1  LINDA CLAXTON, CA Bar No. 125729
   linda.claxton@ogletree.com
2  SAMUEL P. KNECHT, CA Bar No. 314693
   samuel.knecht@ogletree.com
3  JULIANA C. VALLIER, CA Bar No. 345339
   juliana.vallier@ogletree.com
4  OGLETREE, DEAKINS, NASH, SMOAK &
   STEWART, P.C.
5  400 South Hope Street, Suite 1200
   Los Angeles, CA  90071
6  Telephone:    213-239-9800
   Facsimile:    213-239-9045
7
   Attorneys for Defendant
8  PREMIUM RETAIL SERVICES, LLC

9  **UNITED STATES DISTRICT COURT**

10 **NORTHERN DISTRICT OF CALIFORNIA**

11

12 | VANESSA MARTINEZ, an individual and on behalf of all others similarly situated, | Case No. _____ |
   |---|---|
   | Plaintiff, | **DEFENDANT PREMIUM RETAIL SERVICES, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT** |
   | v. | |
   | PREMIUM RETAIL SERVICES, LLC., a Delaware limited liability company; PREMIUM RETAIL SERVICES, INC., a Delaware corporation; EZAT RAHIMI, an individual; and DOES 1 through 100, inclusive, | [Filed concurrently with Civil Cover Sheet; Certification of Conflicts and Interested Persons and Disclosure Statement; Notice of Pendency of Other Action; Declarations of Sonya Richburg and Linda Claxton in Support of Removal] |
   | Defendants. | Complaint Filed:  September 21, 2023 |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF VANESSA MARTINEZ AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT defendant Premium Retail Services, LLC ("Defendant"), by and through the undersigned counsel, hereby removes the above-entitled action from the Superior Court of the State of California for the County of Santa Clara to the United States District Court for the Northern District of California pursuant to 28 U.S.C. Sections 1332, 1441(a) and 1446. In support of such removal, Defendant states as follows:

I.   **BACKGROUND**

1. On September 21, 2023, plaintiff Vanessa Martinez ("Plaintiff"), on behalf of herself and others similarly situated, filed the lawsuit entitled *Vanessa Martinez an individual and on behalf of all others similarly situated, Plaintiff, v. Premium Retail Services, LLC* a Delaware limited liability company; Premium Retail Services, Inc., a Delaware corporation; Ezat Rahimi, an individual; *and DOES 1-100, inclusive*, *Defendant.*" Case No. 23CV422925 in the Superior Court for the County of Santa Clara.

2. Plaintiff served the Summons, Complaint, Civil Cover Sheet, Civil Lawsuit Notice, Order Deeming Case Complex and Staying Discovery and Responsive Pleading Deadline on Premium Retail Services, LLC on October 23, 2023. (Declaration of Linda Claxton ("Claxton Decl.") ¶ 2, Ex. A). In accordance with 28 U.S.C. § 1446(a), true and correct copies of "all process, pleadings, and orders" served on Defendant in this action are attached to the Claxton Declaration as Exhibit A.

3. The Complaint asserts class action claims for: (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) waiting time penalties; (6) wage statement violations; (7) failure to pay timely wages; (8) failure to indemnify; (9) violation of Labor Code 227.3; and (9) unfair competition.

4. As set forth more fully below, based on the allegations of the Complaint and other evidence collected by Defendant, this Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C § 1332(d). Therefore, this action may be removed to this Court, pursuant to

28 U.S.C. § 1441.

5.   In accordance with 28 U.S.C. § 1446(d), Defendant will promptly serve this notice of removal on Plaintiff's counsel and file a copy with the clerk of the Superior Court for the County of Santa Clara.

## II.   PROCEDURAL GROUNDS FOR REMOVAL ARE SATISFIED.

6.   Removal is timely, as this Notice is filed within thirty (30) days of Defendant being served with the summons and complaint. 28 U.S.C. § 1446(b).

7.   Under 28 U.S.C. §§ 84(c) and 1441(a), venue is proper in the United States District Court for the Northern District of California because this Court embraces the Superior Court for the County of Santa Clara, where this action was pending.

8.   From its review of the state court docket, Defendant is aware that Plaintiff filed the proof of service of summons on Premium Retail Services, LLC on October 25, 2023. Otherwise, Defendant is not aware of any further proceedings or filings regarding this action in that court. Defendant need not secure consent from the "Doe" defendants prior to removal. 28 U.S.C. § 1453(b) ("[S]uch action may be removed by any defendant without the consent of all defendants."); *see, e.g., United Comput. Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002) (explaining that the consent requirement "does not apply to" "unknown" parties). Defendant is informed and believes, and on that basis alleges, that neither Premium Retail Services, Inc. nor Ezat Rahimi have been served with the Summons and Complaint in this matter.

9.   The removing party need only provide a "short and plain statement of the grounds for removal" and need not submit evidence unless and until the opposing party challenges the factual allegations in the notice of removal. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81 (2014); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("[A] removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements." (citation omitted)).

/ / /

/ / /

/ / /

## III. THIS COURT HAS JURISDICTION OVER THIS ACTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT

10. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), which grants federal district courts jurisdiction over putative class actions with more than 100 class members where the aggregate amount in controversy exceeds $5 million and any member of the class of plaintiffs is a citizen of a state different from any defendant. As set forth below, this action satisfies each of the requirements of section 1332(d)(2) for original jurisdiction under CAFA.

11. Support for CAFA jurisdiction in this action is based both on the allegations of the Complaint and Defendant's investigation of its business records.[1] *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1123 (9th Cir. 2013) (A defendant "may remove to federal court when it discovers, based on its own investigation, that a case is removable.").

### A. This is a covered class action.

12. This action meets CAFA's definition of a class action, which is "any civil action filed under Fed. R. Civ. P. 23 or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. §§ 1332(d)(1)(B), 1435(a) & (b). Plaintiff purports to bring this action on behalf of herself and "all others similarly situated" and identifies the class of persons on whose behalf this action is filed as "all current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint until the time that notice of the class action is provided to the class." (Compl. ¶ 24.)

13. Plaintiff brings these claims pursuant to California's class action statute, California Civil Procedure Code section 382, and alleges that "there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable." (Compl. ¶ 26.)

---

[1] In making its good faith calculations of the size of the purported class and the amounts-in-controversy being sought by the Complaint, Defendant does not concede or admit, in any fashion, that any claims for such amount, or any amounts, have legal or factual merit, or that the persons on behalf of which such claims are asserted could properly be certified as members of a class under Fed. R. Civ. P. 23, and reserves all rights and defenses to such claims.

**B.     The Proposed Class Exceeds 100 Members.**

14.     Plaintiff seeks to represent all similarly situated employees subjected to the alleged illegal pay practices. (Compl. ¶ 24.)

15.     Plaintiff alleges that "while the precise number of Class Members has not been determined yet, Plaintiff is informed and believes that there are over seventy-five (75) Class Members employed by Defendants within the State of California." (Compl. ¶ 27.)  Plaintiff further alleges that "[a]ccounting for employee turnover during the relevant periods necessarily increases this number.  Plaintiff alleges Defendants' employment records would provide information as to the number and location of all Class Members." (Compl. ¶ 28.)  Based on a review of Defendant's business records, 7649 individuals were employed as hourly employees in California by Defendant at some time during the period from September 21, 2019 until November 16, 2023[2] ("Putative Class Members" or "PCM's").  (Claxton Decl., ¶¶ 3, 7; Richburg Decl., ¶¶ 2, 4.)  Accordingly, for purposes of removal, the aggregate number of putative class members as defined by the Complaint is greater than 100 persons, as required by 28 U.S.C. § 1332 (d)(5)(B).

**C.     The Parties are Minimally Diverse.**

16.     The minimal diversity requirement of 28 U.S.C. § 1332(d) is met in this action because the citizen of at least one class member is diverse from the citizenship of at least one defendant.  28 U.S.C. § 1332(d)(2)(A).

17.     For removal purposes, citizenship is measured both when the action is filed and removed.  *Strotek Corp. v. Air Transport Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

**1.     Plaintiff is a Citizen of California**

18.     For diversity purposes, a person is a citizen of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  Residence is

---

[2] Defendant's most recent list of putative class members includes current and former non-exempt hourly paid employees employed by Defendant in California for the period September 21, 2019 to November 16, 2023, the date the data was collected from Defendant's Human Resources Information System. (Claxton Decl., ¶ 3, Declaration of Sonya Richburg ("Richburg Decl.") ¶¶ 1, 4.)

prima facie evidence of domicile. *See State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise); *Marroquin v. Wells Fargo*, LLC, 2011 U.S. Dist. LEXIS 10510, at *3-4 (S.D. Cal. 2011); *Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, *22 (E.D. Cal. 2008) (place of residence provides prima facie case of domicile); *see Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (allegations of residency in a state court complaint can create a rebuttable presumption of domicile supporting diversity of citizenship).

19. The Complaint alleges that Plaintiff is a resident of California. (Compl. ¶ 2.) Defendant's employment records reflect that Plaintiff's residence was in San Jose, California at the time of her employment with Defendant. (Claxon Decl., ¶ 11.) Plaintiff also alleges that:

> Santa Clara County is where the causes of action complained of herein arose; the county in which the employment relationship began; the county in which performance of the employment contract, or part of it, between Plaintiff and Defendants was due to be performed; the county in which the employment contract, or part of it, between Plaintiff and Defendants was actually performed. . . .

(Compl. ¶ 11.) Accordingly, Plaintiff is a citizen, resident and domiciliary of the State of California.

### 2. **Defendant Is Not a Citizen of California.**

20. For diversity purposes, a limited liability company is deemed a citizen of any State of which its owners/members are citizens. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (applying the standard used by sister circuits and treating LLCs like partnerships). For diversity purposes, "a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1); *see also Hertz Corp. v. Friend,* 559 U.S. 77, 78, 80-81 (2010) (explaining the phrase "principal place of business" in 28 U.S.C. § 1332(c)(1) refers to the place where a corporation's high level officers direct, control and coordinate the corporation's activities, *i.e.*, its nerve center, which will typically be found at its corporate headquarters).

/ / /

21. Defendant Premium Retail Services, LLC is a limited liability corporation organized under the laws of the State of Delaware. (Richburg Decl., ¶¶ 2-3.) Its sole member is Acosta Inc. (*Id.*) Acosta's headquarters and its executive officers and senior management personnel, at all relevant times were and still are, as of the date of this removal, located in Jacksonville, Florida. (*Id.* Based on the location of the officer positions above, corporate decisions are made either individually, or as a management team, in Jacksonville, Florida. (*Id.*)

22. Because Acosta is incorporated in Delaware, with its principal place of business in Jacksonville, Florida, under 28 U.S.C. § 1332(c)(1), it is a citizen of Delaware and Florida. Accordingly, Premium Retail Services, LLC is a citizen of Delaware and Florida.

23. Minimal diversity is established because Plaintiff is a citizen of California and Defendant is not; Defendant is citizen of Delaware and Florida. Removal is therefore proper under 28 U.S.C. § 1332(d). *Serrano v. 180 Connect Inc.*, 478 F.3d 1018, 1019 (9th Cir. 2007).

**D.    The Aggregate Amount In Controversy Exceeds $5 Million**

24. Under CAFA, the claims of the individual class members are aggregated to determine if the amount in controversy exceeds the required "sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2), (d)(6); *see also Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006). The amount in controversy "is simply an estimate of the total amount in dispute, not a prospective assessment of the defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin*, 574 U.S. at 89. To determine the amount in controversy, the Court must assume that the allegations in the operative pleading are true and that a jury will return a verdict for the plaintiff on all such claims. *See Cain v. Hartford Life & Accident Ins. Co.*, 890 F. Supp. 2d 1246, 1249 (C.D. Cal. 2012) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe.") (quoting *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)) (emphasis and internal quotation marks omitted).

///

25. Plaintiff does not specifically plead the amount of damages claimed. Where this is the case, a defendant need only make a prima facie showing that it is more likely than not that the amount in controversy exceeds $5 million. *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997); *Korn*, 536 F. Supp. 2d at 1205. A "removing defendant is not obligated to 'research, state, and prove plaintiff's claims for damages.'" *Korn*, 536 F. Supp. 2d at 1204-05 (emphasis omitted). Defendant may rely on "reasonable assumptions" in calculating the amount in controversy for removal purposes. *Arias*, 936 F.3d at 922. Furthermore, in cases where statutory penalties are sought, as is the case here, "district courts . . . of California have looked to the statutory maximum . . . in determining whether the jurisdictional requirements of CAFA have been met." *Korn*, 536 F. Supp. 2d at 1205.

26. "[I]n wage-and-hour cases, the amount in controversy turns on the frequency of the alleged violations of California labor laws." *Hayes v. Salt & Straw, LLC*, 2020 WL 2745244, at *3 (C.D. Cal. May 27, 2020). If the complaint is ambiguous, as here, defendants are entitled to make reasonable assumptions concerning the number of violations. *See, e.g., Arias*, 936 F.3d at 922. An assumed violation rate of one violation per week is frequently considered reasonable where the plaintiff alleges a pattern and practice of conduct. *E.g., Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, at *5 (C.D. Cal. Dec. 3, 2019) (noting that "other courts within the Ninth Circuit have accepted a rate of one violation per work week as an acceptable basis for calculating the amount in controversy" and accepting same); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403, at *7 (C.D. Cal. May 9, 2018) (same); *Arreola v. Finish Line*, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("Where . . . the plaintiff pleads that an employer has a regular or consistent practice of violating employment laws . . . such an allegation supports a defendant's assumptions that every employee experienced at least one violation once per week."); *Jasso v. Money Mart Express, Inc.*, 2012 WL 699465, at *5 (N.D. Cal. Mar. 1, 2012) ("Given the allegations . . . that the violations took place 'at all material times,' one violation per week on each claimed basis is a sensible reading of the alleged amount in controversy, as pleaded by Plaintiff.").

27. Based on Plaintiff's allegations in the Complaint, evidence collected by Defendant, and Defendant's reasonable assumptions concerning violations derived from the allegations in the

Complaint, the aggregate amount in controversy from the putative class allegations satisfies the jurisdictional threshold.  *See Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (finding in wage and hour class action that defendant established amount in controversy by a preponderance of the evidence where defendant's calculations "were relatively conservative, made in good faith, and based on evidence wherever possible").

28. The Complaint seeks minimum and overtime wages, interest on wages, civil and statutory penalties, restitution, liquidated damages, compensatory damages including unreimbursed expenditures, reasonable attorneys' fees, and costs of suit on ten causes of action brought under a multitude of different labor statutes for each member of the proposed class.  (*See* Compl. at pp. 21-22 ("Prayer for Relief").)

29. In determining the amount in controversy to support its Notice of Removal, Defendant relies here on a conservative estimate based only on damages sought by Plaintiff as a result of the alleged: (1) failure to pay overtime wages; (2) failure to provide meal periods; (3) failure to provide rest periods; and (4) failure to pay final wages timely.  Conservatively, Defendant estimates that Plaintiff's Complaint places at least the following amounts in controversy:

- Unpaid overtime wages (first cause of action): $6,113,399
- Failure to provide meal periods (third cause of action): $4,075,599
- Failure to provide rest periods (fourth cause of action): $4,075,599
- Final wages not timely paid (fifth cause of action): $16,840,502
- **Total Estimated amount in controversy: $31,105,099**

30. Because the amounts in controversy for these four claims alone exceed the jurisdictional minimum requirement of $5 million, Defendant does not include additional analyses for estimates of the amounts placed in controversy by Plaintiff's other six causes of action, as alleged in the Complaint, including potential damages sought for the alleged violations of failure to pay minimum wages (second cause of action), non-compliant wage statements (sixth cause of action), failure to timely pay wages (seventh cause of action), failure to indemnify (eighth cause of action), failure to pay vested vacation benefits (ninth cause of action), and unfair competition (tenth

cause of action). Defendants further do not account for the amount placed into controversy by the Plaintiff's request for attorney's fees and costs (*see e.g.*, Complaint – Prayer for Relief, pgs. 21-22), even though such is properly considered for determining the amount in controversy for removal purposes. *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018). That said, Defendants reserve the right to do so in opposition to any remand motion.

### 1. Plaintiff's First Cause of Action for Unpaid Overtime Wages Places at Least $6,113,399 in Controversy.

31. Plaintiff's First Cause of Action seeks unpaid overtime wages for time allegedly worked but not compensated. (Compl. ¶¶ 34-40.) Specifically, Plaintiff alleges that "Plaintiff and Class Members, at times, worked for Defendants during shifts that consisted of more than eight (8) hours in a workday and/or more than forty hours in a workweek, and/or seven (7) consecutive workdays in a workweek, without being paid overtime wages for all hours worked as a result of, including but not limited to, Defendants failing to accurately track and/or pay for all hours actually worked at the proper overtime rate of pay. . . ." (Compl. ¶¶ 12, 38.) As a result, Plaintiff alleges that he and the proposed class members "have been deprived of overtime wages" and are entitled to "recovery plus interest and penalties thereon, [and] attorneys' fees and costs. . . ." (Compl. ¶ 40.)

32. The statute of limitations for a claim seeking unpaid overtime wages is three years. Cal. Civ. Proc. Code § 338. This is extended to four years due to Plaintiff's UCL claim. *See Sullivan v. Oracle Corp.,* 51 Cal.4th 1191, 1206; *Maravilla v. Rosas Bros. Constr., Inc.*, 401 F. Supp. 3d 886, 901 (N.D. Cal. 2019) (allowing plaintiff to recover an additional year's worth of unpaid wages not otherwise recoverable under Cal. Lab. Code § 1194 based on UCL claims).

33. The Complaint does not allege the number of violations that occurred from September 21, 2019 to the present, or the amount of unpaid wages allegedly owed to Plaintiff or the PCM's. Plaintiff alleges "Plaintiff and Class Members sustained injuries and damages arising out of and caused by Defendants' common course of conduct . . . ." (Compl. ¶ 30.) Due to Plaintiff's allegation of a "common course of conduct" of failing to compensate employees for all time worked, Defendant may reasonably base its amount in controversy calculations on an estimate that each class member was not compensated for one hour of overtime wages per week. *See, e.g.,*

*Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, at *5 (finding reasonable Defendant's assumption that the class members were not compensated for one hour of minimum wages per work week where plaintiff alleged a "pattern and practice" of wage abuse); *Soto v. Greif Packaging, LLC*, 2018 WL 1224425, at *3 (C.D. Cal. Mar. 8, 2018) (finding allegation that defendant failed to pay minimum wage for all hours worked on a "consistent and regular basis" sufficient to support estimate of one hour per week per class member); *Francisco v. Emeritus Corp.*, 2017 WL 2541401, at *7 (C.D. Cal. June 12, 2017) ("Because Plaintiff claims that unpaid minimum wage and overtime violations occurred regularly, as a pattern and practice, the Court finds Defendant's assumption of one minimum wage and overtime violation per workweek to be reasonable."); *Feao v. UFP Riverside*, LLC, 2017 WL 2836207, at *5 (C.D. Cal. June 29, 2017) (approving of defendant's "measured" assumption that "each class member worked only one unpaid hour of overtime and missed only one hour of minimum wage work per work week"); *Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, at *6-7 (C.D. Cal. May 9, 2011) (allegation of "consistent overtime work" justified defendant's "reasonable and conservative" assumption that each class member was entitled to one hour of overtime per week).

34. Plaintiff further alleges that the failure to pay overtime wages alleged in the First Cause of Action constitutes unlawful business acts and practices within the meaning of Business and Professions Code Section 17200. (Compl. ¶¶ 99-100.) The statute of limitations for such a claim is four years. Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued"); *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 178-179 (2000) (the four-year statute of limitations applies to any UCL claim, notwithstanding that the underlying claims have shorter statutes of limitation).

35. Based on a review of its business records, Defendant is able to estimate the number of weeks that each individual employee worked during the class period, identify each potential class member's hourly rate of pay, and estimate each employees overtime rate (1.5 times the hourly rate of pay). (Claxton Decl., ¶ 10.) Assuming Plaintiff and the Class Members are owed one additional hour of overtime compensation per week, Defendant can estimate the unpaid overtime

wages allegedly owed to each individual employee.[3]

36. From its employment records, Defendant is able to make this calculation for each of the 7,649 PCM's in order to estimate each individual employee's allegedly unpaid overtime wage. Aggregated together, for the period September 21, 2019 to November 16, 2023, the total of these allegedly unpaid wages is $6,113,399.

### 2. **Plaintiff's Third and Fourth Causes of Action for Failure to Provide Meal Periods and Rest Periods Places at Least $4,075,599 in Controversy.**

37. Plaintiff's Third Cause of Action seeks premium wages for Defendant's alleged failure to provide all legally compliant meal periods. (Compl. ¶¶ 47-54.) Plaintiff's Fourth Cause of Action seeks premium wages for Defendant's alleged failure to provide all legally compliant rest periods. (Compl. ¶¶ 55-62.)

38. As to Plaintiff's Third Cause of Action, Plaintiff alleges that "Plaintiff and the Class Members were, at times, not provided complete, timely 30-minute, duty-free uninterrupted meal periods every five hours of work without waiving the right to take them, as permitted," or "a second thirty-minute uninterrupted meal period for days on which they worked in excess of ten (10) hours in a work day, and failing to provide compensation for such unprovided meal periods," as required. (Compl. ¶¶ 51, 14.) Plaintiff alleges that "Defendants failed to provide one (1) additional hour of pay at the Class Member's regular rate of compensation on the occasions that Class Members were not provided compliant meal periods." (Compl. ¶ 51.) As a result, Plaintiff alleges that she and the proposed class members "are entitled to recover the full amount of their unpaid additional pay for unprovided compliant meal periods," including interest, penalties, and attorneys' fees and costs. (Compl. ¶ 54.)

/ / /

---

[3] Unpaid overtime wages owed: (work weeks for individual employee) x (one unpaid overtime hour per week) x (1.5 x (standard rate of pay for individual employee)) = unpaid overtime wages owed to individual employee. Once this calculation is complete for each potential class member, the individual calculations can be aggregated to determine the total unpaid overtime wages in controversy.

39. As to Plaintiff's Fourth Cause of Action, Plaintiff alleges that "Plaintiff and the Class Members were, at times, not authorized or permitted to take complete, timely ten-minute, duty-free uninterrupted rest periods every four (4) hours of work or major fraction thereof" and "failed to provide one (1) additional hour of pay at the Class Member's regular rate of compensation on the occasions that Class Members were not authorized or permitted to take compliant rest periods." (Compl. ¶¶ 15, 59.) As a result, Plaintiff alleges that she and the proposed Class Members "are entitled to recover the full amount of their unpaid additional pay for unprovided compliant rest periods," including interest, penalties, and attorneys' fees and costs. (Compl. ¶ 62.)

40. Plaintiff further alleges that the failure to provide meal and rest period premiums alleged in the Third and Fourth Causes of Action constitutes unlawful business acts and practices within the meaning of California Business and Professions Code Section 17200. (Compl. ¶¶ 99-100.) The statute of limitations for such a claim is four years. Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued"); *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 178-179 (2000) (the four-year statute of limitations applies to any UCL claim, notwithstanding that the underlying claims have shorter statutes of limitation).

41. The Complaint does not allege the number of meal or rest periods not provided to Plaintiff or the proposed class members during the statute of limitations period for which premium pay is allegedly due.

42. Based on a review of Defendant's business records, for the period September 21, 2019 to November 16, 2023, 7649 PCM's worked approximately 247,006 workweeks (Claxton Decl., ¶ 7.) These PCM's received an estimated average base hourly rate of $16.50. (*Id.*)

43. Assuming, arguendo, the truth of Plaintiff's allegations, PCM's are entitled to recover at least $4,075,599 for unpaid meal period premium pay and at least $4,075,599 for unpaid rest period premium pay, as follows: assuming a conservative twenty percent (20%) violation rate for both missed first meal periods and rest periods (1 missed meal period per week and 1 missed rest period per week): $16.50 (estimated average base hourly rate for PCM's during the four-year

1  period) x 247,006 (workweeks during the applicable four-year period) x 2 (2 missed meal/rest
2  periods per week).

3  44.  The foregoing meal and rest period assumptions are well within the range of up to
4  50-60% generally accepted by this Court as a reasonable conservative assumption when calculating
5  the amount in controversy for CAFA purposes.  *See, e.g., Stanley v. Distribution Alts., Inc.*, No.
6  EDCV172173AGKKX, 2017 WL 6209822, at *2 (C.D. Cal., Dec. 7, 2017) (accepting assumed
7  violation rates of "three missed rest breaks, and three missed meal breaks per week" where the
8  complaint offered no guidance as to the frequency of the alleged violations); *Bryant v. NCR Corp.*,
9  284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (60% violation rate was "conservative"); *Oda v.
10  Gucci Am., Inc.*, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (violation rate of 50%); *Mendoza
11  v. Savage Servs. Corp.*, No. 219CV00122RGKMAA, 2019 WL 1260629, at *2 (C.D. Cal., Mar.
12  19, 2019) (holding California district courts "routinely apply a 20% violation rate—that is, one
13  missed meal and rest period per work week—for meal and rest period premiums"); *Mortley v.
14  Express Pipe & Supply Co.*, No. SACV 17-1938-JLS-JDE, 2018 WL 708115, at *4 (C.D. Cal.,
15  Feb. 5, 2018) (finding defendant's assumption that class members missed two meal periods and
16  two rest periods each per week based on allegations of "a company-wide policy and/or practice of
17  understaffing" was reasonable).

18  45.  Thus, Plaintiff's Third and Fourth Causes of Action place at least $8,151,198 in
19  controversy.

20  **3.  Plaintiff's Fifth Cause of Action for Untimely Payment of Final Wages Places at Least $16,840,502 in Controversy.**

22  46.  Plaintiff's Fifth Cause of Action seeks penalties under California Labor Code § 203
23  for failure to timely pay wages due at termination.  (Compl. ¶¶ 63-70.)  Specifically, Plaintiff
24  alleges that Defendant "failed to pay Plaintiff and Class Members all wages earned prior to
25  resignation or termination," including "failing to pay overtime wages, minimum wages, premium
26  wages, and vacation pay. . . ." (Compl. ¶¶ 16, 66-67.)

27  47.  As a result, Plaintiff alleges that she and the proposed class members are entitled to
28  recover "penalties from the date their earned and unpaid wages were due, upon termination or

resignation, until paid, up to a maximum thirty (30) days" pursuant to California Labor Code § 203 for Defendant's willful failure to pay. (Compl. ¶¶ 67, 69.) An employer that willfully fails to pay all wages due at termination within the required time is subject to a penalty whereby the employee's wages continue to accrue for up to 30 days from the due date until back wages are paid or an action is commenced. Cal. Lab. Code § 203.

48. The applicable statute of limitations for a claim seeking Labor Code section 203 penalties is three years (from September 21, 2020 to the present). Cal. Lab. Code § 203; Cal. Civ. Proc. Code § 338.

49. The Complaint does not allege the number of violations that occurred during the relevant time period. Instead, Plaintiff alleges that "Defendants, at times, failed to pay Plaintiff and Class Members, or some of them, the full amount of their wages owed to them upon termination and/or resignation," as required. (Compl. ¶¶ 16, 66.)

50. Additionally, Plaintiff relies on his other allegations to support his claim that he and the proposed class members did not receive all wages owed to them upon termination. (See Compl. ¶ 63 ("Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth hereat.").) If Plaintiff's other claims are found to be true, all class members terminated more than thirty (30) days ago are entitled to 30 days' waiting period wages under Labor Code section 203.

51. PCM's would be owed 240 hours of additional compensation at their hourly rate of pay – the equivalent of 30 days' of work. *See Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, at *8 (finding "reasonable" defendant's assumption that putative class members did not receive final wages for the full 30-day period under which penalties may accrue"); *Long v. Destination Maternity Corp.*, 2016 WL 1604968, at *9 (S.D. Cal. Apr. 21, 2016) (finding Defendant's assumption that final wages went unpaid for the full thirty days is reasonable where plaintiff alleges that defendant failed to pay final wages and still had not paid plaintiff all wages).

52. Of the putative class, approximately 4,703 employees were no longer employed with Defendant within three years prior to the filing of the complaint on November 16, 2023. These individuals' average hourly rate of pay was $14.92. (Claxton Decl., ¶¶ 7-8.) Using this

data, Defendant can determine the amount of waiting time penalties owed to each individual employee under Labor Code section 203. The amount in controversy totals $16,840,502 for these employees ($14.92 avg rate/hr x 240 hrs (8 hrs/day x 30 days) x 4,703 employees). (*Id.*)

53.     Thus, Plaintiff's Fifth Cause of Action places approximately $16,840,502 in controversy.

### E.  **No Exception Applies to Defeat CAFA Jurisdiction.**

54.     Neither CAFA's "local controversy" nor its "home state" exceptions apply to this case. For the home state exception to apply, all primary defendants must be citizens of the state in which the case is filed. 28 U.S.C. § 1332(d)(B); *see also Corsino v. Perkins*, 2010 WL 317418, at *5 (C.D. Cal. Jan. 19, 2010). Similarly, for the local controversy exception to apply, at least one defendant must be a citizen of California, and that defendant's conduct must form a significant basis for the claims asserted by the proposed plaintiff class. 28 U.S.C. § 1332(d)(4)(i)(II). Defendant is not a citizen of California, so neither exception applies.

## IV.  **RESERVATIONS OF RIGHTS.**

55.     By removing this matter, Defendant does not waive and, to the contrary, reserve any rights they may have, including, without limitation, all available arguments and affirmative defenses. Defendant does not concede that class certification is appropriate or that Plaintiff is entitled to any recovery whatsoever. Should the Court or opposing counsel request additional information, evidence, and/or calculations to demonstrate that this Action places at least $5 million in controversy, Defendant reserves the right to refine the methodologies used here and calculate the amount in controversy with greater precision, which may significantly increase the result. In the event Plaintiff files a request to remand, or the Court considers remand *sua sponte*, Defendant respectfully requests the opportunity to submit additional argument and/or evidence in support of removal.

/ / /

/ / /

/ / /

/ / /

## V. CONCLUSION

56. WHEREFORE, Defendant respectfully requests that its Notice of Removal be deemed good and sufficient and for this Court to exercise subject matter jurisdiction over this removed action.

DATED: November 22, 2023

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Linda Claxton
Linda Claxton
Samuel P. Knecht
Juliana C. Vallier

Attorneys for Defendant
PREMIUM RETAIL SERVICES, LLC